[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The parties intermarried on February 19, 1966 in Schenectady, New York. The parties have resided continuously in this state since 1978. There are no minor children issue of the marriage.
The evidence presented at trial has clearly established the allegation that the marriage has irretrievably broken down. Judgment may enter dissolving the marriage on that ground.
The plaintiff husband initiated this action and the defendant wife filed a cross-complaint. The plaintiff withdrew his complaint and the defendant has proceeded on her cross-complaint.
The court has carefully considered the criteria set forth in46b-81, 46b-82 and 46b-62 of the Connecticut General Statutes in reaching the decisions reflected in the orders that follow.
The parties have been married for 26 years.
The defendant wife is 50 years of age. Throughout most of the marriage she assumed the traditional role of homemaker, devoting herself to the raising of the parties' two children, her home and husband. The wife is a college graduate. Approximately six years ago she obtained her realtors license and has been gainfully employed, full time, since that time. The defendant wife earned an average net before taxes of approximately $16,000 for the years 1990 and 1991 in her endeavors in the real estate field. With the decline in the real estate market, the wife has earned substantially less in 1992. In addition, the wife formed Home Care, Inc. in which she manages four (4) condo units. The defendant wife earns a gross of $340 a month and a net of $106 per month in this business.
The court had an opportunity to observe the parties and their demeanor. The court finds the defendant wife to be the more credible witness. Based on the evidence presented during this seven day trial the court finds that the defendant wife is not an alcoholic as portrayed by the husband.
The plaintiff husband is 53 years of age. He testified as to some health problems, however, none of his health problems appear to have affected his working ability. During the course of the marriage the husband specialized in mergers and acquisitions. In 1982, after the parties had moved to Connecticut, the husband became President of Merrill Lynch Realty. Thereafter, he formed CT Page 5200 First National Realty — a real estate holding company. This company is presently in Chapter 11 Bankruptcy proceedings. The husband resigned from this company in March 1992, immediately prior to the bankruptcy filing. The husband is also a college graduate and has an MBA from Dartmouth. He appears to have a certain amount of expertise in the field of finances, realty, and mergers and acquisitions. In 1991 the husband's compensation was approximately $187,500. The husband has no retirement or pension plan. At the present time, the husband is living in Atlanta, Georgia. He is renting a four bedroom home at a monthly rental of $1,850 per month. The husband testified he is current on the payment of his rent. The husband has continued to pay the college expenses for their two children, both of whom will graduate this year.
Much testimony was presented concerning the business acumen of the plaintiff husband. He appears to be well respected in the financial field of mergers and acquisitions. Unfortunately, his last company — First National Realty Association, a publicly held company, filed for Chapter 11 Bankruptcy proceedings in April 1992. The plaintiff resigned as C.E.O. from this company shortly before the filing and he has been unemployed and without income since March 30, 1992. Based on the defendant's past track record and experience, the court anticipates he will be gainfully employed in a comparable capacity within the near future. The court finds that the plaintiff husband has an earning ability and capacity of $187,000 per year. The court notes that the plaintiff's 1990 income tax return indicates the husband had a gross income of $229,106.
The parties have had their share of ups and downs during the course of this marriage. In the mid 1980's the parties separated for approximately 6 months. The wife testified that the husband admitted he had had affairs with women in Florida. Substantial circumstantial evidence was presented indicating that the husband had more than a business relationship culminating in a vacation to the Cayman Islands in June, 1991 with one Susan Fentress. It would serve no useful purpose to review the evidence presented on this issue. The plaintiff denied any involvement with Susan Fentress and a cat and mouse chase continued throughout the seven days of trial.
The husband claims the marriage broke down in 1981 and he has steadfastly denied any infidelity on his part, although Susan Fentress stays at his home in Atlanta when the plaintiff is traveling or in Connecticut.
In reviewing the totality of this evidence, the court finds that the plaintiff and Susan Fentress had more than a business relationship. The plaintiff was less than circumspect in testifying concerning Susan Fentress and Betty Sloan. CT Page 5201
The court read the deposition of Barbara Moss which was admitted as an exhibit. The deposition is filled with hearsay, rumors and office gossip. The court gave very little weight to this deposition.
Unfortunately, the parties were unable to resolve their marital difficulties. The marriage appears to have been in difficulty even before the arrival of Susan Fentress on the scene. The wife's belief in her husband's infidelity contributed to the breakdown. However, the evidence presented indicates that in weighing the issue of fault, the greater fault for the cause of the breakdown must be attributed to the plaintiff.
The court has carefully considered all the statutory criteria as set forth in our statutes, 46b-81, 46b-82 and 46b-62 in reaching the decisions reflected in the orders that follow.
The major asset of the marriage at this time is the marital home located at 60 Long Lots Road, Westport, Connecticut. The home was originally purchased in joint names but in July 1990, the husband transferred his interest to the wife who is presently the sole owner of the equity. The home was purchased in 1978 for $179,000 with funds earned by the husband. The parties made major improvements to this home in the approximate amount of $150,000.
The defendant's broker testified the home has a market value of $495,000 to $505,000. There is a first and second mortgage on this property totaling approximately $186,000. In addition to the two mortgages, there is a credit line of equity in the amount of approximately $60,000, the CBT loan. The husband claims that only a portion of the equity loan was used for the husband's business ventures. The wife claims the full amount was used for the husband's ventures.
In addition to these three mortgages, there is an attachment by the connecticut Bank Trust Co., (Now F.D.I.C.) in the amount of $550,000 against the plaintiff husband's interest in this real estate. The plaintiff is hopeful of substantially reducing this claim.
A substantial amount of time was spent tracing the plaintiff husband's career in his various business endeavors and the various corporations which he set up. There are substantial debts and liabilities which far outweigh any assets of the parties.
The following orders shall enter:
Real Estate CT Page 5202
1. The defendant wife shall retain sole ownership of the real estate located at 60 Long Lots Road, Westport, Connecticut free of any claim by the plaintiff husband.
2. No later than June 1, 1997, the real estate shall be listed for sale and shall be promptly sold.
3. Until such time as the real estate is sold, the plaintiff husband shall continue to pay the interest on the 3rd mortgage, the equity credit line and whatever other payments the bank may require on this loan.
4. Upon the sale of the real estate, and after the payment of the first mortgage, the second mortgage and the third mortgage, the equity credit line, the real estate commission, usual closing costs and attorneys fees, the net proceeds shall be divided 65% to the defendant wife and 35% to the plaintiff husband.
5. The plaintiff shall hold the defendant harmless from any liability arising out of the claims of the F.D.I.C. (including Connecticut Bank Trust Co.) and arising out of litigation which has caused a lis pendens and certificate of attachment to be placed on the real estate at 60 Long Lots Road, Westport.
6. Until the premises are sold, the defendant wife shall be responsible for the first and second mortgages, the real estate taxes, and insurance, utilities and maintenance. Any capital expenditures shall be divided 65% to the wife 35% to the husband.
7. In the event there are any arrears due and owing to the defendant at the time of closing, they shall be deducted from the plaintiff's share of the net proceeds from the sale of the, real estate.
8. The parties shall equally divide 50/50 the cost of any repairs to the septic system.
9. The court shall retain jurisdiction over any disputes arising out of the sale of the real estate.
Alimony 1. At the present time, the plaintiff husband is unemployed. Commencing June 1, 1992, the plaintiff shall pay to the defendant wife the sum of $1.00 per year as alimony until the death of the husband, the death of the wife, her remarriage or cohabitation as defined by statute.
2. The plaintiff is ordered to notify the defendant within one week of his obtaining employment so that appropriate orders may enter with respect to periodic alimony. If the parties are unable to agree on an appropriate award of periodic alimony, they shall CT Page 5203 return to court for a hearing and orders thereon.
3. It is further ordered that 12 months from date the court shall review the financial situation of the parties with respect to the payment of alimony and the other financial orders set forth herein.
4. A contingent wage execution is ordered.
Personal Property
1. The furniture and furnishings contained in the marital home shall be divided between the parties as they shall agree. If the parties are unable to agree they are referred to Family Relations for mediation. If this fails, the parties shall return to court for further orders after a hearing thereon.
Other Property
1. The defendant wife is awarded 50% of the plaintiff husband's interest in 177,800 shares of stock in First National Realty Associates, Inc.
2. The plaintiff husband is awarded his interest in CT. Partners free from any claim by the defendant wife.
3. The plaintiff husband shall be entitled to the federal income tax refund, if any. The evidence indicated the husband is entitled to a $15,000 (approximately) 1990 tax refund.
4. The remaining assets listed on the plaintiff's financial affidavit including the motor vehicle, bank accounts and Pension Plan, shall remain the sole property of the plaintiff — unless otherwise disposed of herein.
5. The remaining assets listed on the defendant's financial affidavit including savings and checking accounts, Homecare Inc., her IRA, shall remain the sole property of the defendant unless otherwise disposed of herein.
Arrearage
 I
The parties were heard at length with respect to the award of pendente lite alimony. The hearing was held in December 1991. The first period covered is from May 1, 1991 to December 31, 1991, a period of eight months. The court ordered that a payment of $1,200 per month alimony pendente lite, retroactive (by agreement of the parties) to May 1, 1991 be held in abeyance and accrue until CT Page 5204 the final hearing. The court further ordered that thereafter (commencing January 1, 1992) the award of temporary alimony pendente lite was to be $5,200 per month.
It was indicated by the court at the pendente lite hearing that the court intended to make only $1,200 per month retroactive to April 28, 1991 (pg. 34 P.L. transcript dated December 20, 1991) Again, the court stated at page 35 of the December 20, 1991 transcript that all the plaintiff was obligated to pay under this order . . . is $1,200 per month.
This court thus finds an arrearage from May 1, 1991 to December 31, 1991 in the amount of $9,600. The court considered and gave the plaintiff credit for his contribution of $4,000 per month (from April to December) and awarded the defendant $1,200 per month alimony pendente lite as a taxable transaction to the defendant.
 II
Commencing January 1, 1992 the pendente lite order was $5,200 per month. The plaintiff filed a Motion to Modify dated March 18, 1992 and the parties agreed that any modification would be retroactive to March 30, 1992.
Addressing January, February and March 1992, first, this court finds that the plaintiff paid to the defendant wife the following: $1,200 cash plus an additional $250 in cash. The husband also turned over to the wife a jointly owned U.S. Trust asset in the amount of $11,600. The wife liquidated this asset and the husband is entitled to a credit of one-half (1/2) that is $5,800. Thus, for the three months of January, February and March 1992 the husband paid the wife a total of $7,250 ($5,800 from the U.S. Trust and $1,450 cash). The husband should have paid $15,600 ($5,200 x 3).
The court finds an arrearage of $8,350 as of March 30, 1992 for the period January 1, 1992 through March 30, 1992.
 III
As stated, the husband filed a Motion to Modify the alimony pendente lite on March 18, 1992. The basis of his Motion was that the plaintiff had no income after March 18, 1992. The parties agreed any order would be retroactive to March 30, 1992. This court modifies the pendente lite order to $1,500 per month retroactive to March 30, 1992. Based on this modification, the court finds an arrears for April and May 1992 in the total amount of $3,000.
IV CT Page 5205
The court finds that the total arrearage owed by the plaintiff to the defendant for her support and maintenance is $20,950. ($9,600 plus $8,350 plus $3,000).
 V
The husband was ordered to contribute the sum of $10,000 for fees to be used for experts. The wife testified she has expended $3,300 for experts' fees. The defendant is awarded $3,300 for expert's fees, said sum to be paid by the plaintiff.
 VI
The payment of the arrears in the amount of $20,950, as set forth above and the payment of $3,300 expert fees, shall be deferred as follows: until such time as the plaintiff obtains employment or twelve months from date, at which time the court shall review the financial situation of the parties to determine an appropriate payment plan, or upon the sale of the real estate, whichever event shall first occur.
Debts
1. The husband shall be responsible for the debts and liabilities as listed on his financial affidavit, unless otherwise disposed of herein.
2. The wife shall be responsible for the debts and liabilities as listed on her financial affidavit, unless otherwise disposed of herein.
Insurance
The wife shall be noted as the beneficiary on the plaintiff's life insurance presently owned by the husband for so long as the husband has an obligation to pay alimony. This provision shall be modifiable.
Attorneys Fees
1. The plaintiff shall pay to the defendant as a contribution towards her attorney's fees the sum of $2,500. Said amount shall be paid within twelve months of date or upon the sale of the real estate whichever event shall first occur. The court has taken into consideration that the wife has already received some counsel fees, the wife claims $5,000 — the husband claims $8,000.
2. Said counsel fees shall be paid directly to the wife and shall be considered to be additional support and maintenance for CT Page 5206 the wife and shall survive any bankruptcy filing of the husband.
Miscellaneous
The husband shall hold the wife harmless from any liability arising out of the jointly filed income tax returns including the 1989 tax return.
COPPETO, JUDGE